**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROY EUGENE HARRIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:04CV82-DJS |
| | ) | |
| **DR. ROBERT HAMPTON, GALE BAILEY,** | ) | |
| **G. JORGENSON, TOM BAKER,** | ) | |
| **JOHN TREU, RICHARD MILES,** | ) | |
| **GEORGE LOMBARDI, and GARY KEMPKER,** | ) | |
| | ) | |
| Defendants. | ) | |

<u>ORDER</u>

The pro se prisoner plaintiff Roy Eugene Harris brings the instant action pursuant to 42 U.S.C. § 1983, against defendants, corrections officials/officers and prison medical staff. Defendants have provided plaintiff with treatment for high blood pressure. Plaintiff alleges that defendants acted with deliberate indifference to plaintiff's medical needs in the treatment of plaintiff and by allowing defendant Dr. Robert Hampton to treat and prescribe medication for plaintiff after the revocation of defendant Hampton's medical license. Complaint [Doc. #2], p. 9. All claims asserted by plaintiff against defendants G. Jorgenson, Tom Baker, John Treu, Richard Miles, George Lombardi and Gary Kempker were dismissed on April 18, 2005. Additionally, all claims asserted by plaintiff against defendant Gale Bailey were dismissed on July 14, 2005, leaving only plaintiff's claims

asserted against defendant Dr. Robert Hampton. Now before the Court is defendant Hampton's motion for summary judgment. For the reasons stated herein, defendant Hampton's motion for summary judgment is granted.

## **Background**

As defendant Hampton points out in his reply, all matters set forth in the statement of facts of defendant Hampton not specifically controverted by the plaintiff are deemed admitted for the purpose of summary judgment. E.D.Mo. L.R. 7-4.01(E). The Court has viewed the facts in a light most favorable to the non-movant, observed the local rule as stated above, and construed plaintiff's pro se filings liberally. The following facts are thereby established for purposes of the summary judgment motion.

On approximately July 21, 2004, the State of Missouri revoked defendant Hampton's medical license. Defendant Hampton treated plaintiff both before and after the revocation. Before plaintiff was under defendant Hampton's care, plaintiff was confined at two other institutions where he complained of hematuria (blood in the urine) and pain in his lower abdomen, testicles, and groin. Plaintiff asserts this not to be the case, however he fails to provide any support for these allegations or to directly dispute defendant Hampton's assertion, which is supported by attached medical records. Additionally, plaintiff received treatment for kidney stones and chronic conditions of high blood pressure and

hypertension. Starting as early as September 25, 2003, plaintiff was prescribed 25 mg hydrochlorothiazide ("HCTZ") per day, which he reportedly took without complaints. Almost six months later, on March 23, 2004, plaintiff reported that he had been experiencing headaches for approximately two weeks.

Three weeks later, on or about April 15, 2004, defendant Hampton began treating plaintiff for high blood pressure. Defendant Hampton continued plaintiff on HCTZ and discussed with him proper diet and exercise to reduce plaintiff's health risks associated with hypertension. On or around May 11, 2004, defendant Hampton increased plaintiff's medication from 25 mg to 50 mg HCTZ after reviewing plaintiff's medical records, and ordering a blood test and an EKG. On July 8, 2004, almost ten months after plaintiff began taking HCTZ, plaintiff complained that the medication was not working and informed medical staff that he had stopped taking it. On July 15, 2004, plaintiff complained that the HCTZ was making him sick and he was taken off of the medication. After taking plaintiff off of the medication, defendant Hampton had plaintiff's blood pressure checked daily for seven days.

On July 29, 2004, plaintiff complained of blood in his urine. Defendant Hampton treated plaintiff and determined that he had clear urine and no evidence of a urinary tract infection. Defendant Hampton ran a urinalysis report on August 3, 2004, which came back negative. Defendant Hampton explained to plaintiff that

he might have kidney stones.  In response, plaintiff asked to have an x-ray performed to check the hypothesis, but defendant Hampton chose not to perform the x-ray.  A couple weeks later, on August 23, 2004, plaintiff was asked and initially refused to allow medical staff to monitor his urine.  A week later, plaintiff did submit to the monitoring and the results came back negative.  Subsequently, defendant Hampton discussed with plaintiff the one episode of hematuria and plaintiff's history of kidney stones.  On September 3, defendant Hampton concluded that plaintiff had kidney stones.[1]

The defendant Hampton never saw or examined plaintiff after September 3, 2004, after which date plaintiff was under the medical care of other prison medical staff.  Before the end of the relationship, plaintiff was placed on Atenolol by defendant Hampton through the end of October, 2004.  During the treatment by defendant Hampton, plaintiff's blood pressure did exceed 140/90 at times.  On at least three occasions after September 3, 2004, plaintiff had episodes of hematuria.  Additionally, on or about October 4, 2004, plaintiff was treated for a severe nosebleed.

A urinalysis performed by Dr. Faubion on October 14, 2004 turned up some abnormal findings.  However, a subsequent test on

---

[1] Plaintiff asserts in his response that defendant Hampton did in fact diagnose him with kidney stones on September 3, 2004. However in plaintiff's sur-reply, he argues that he was never diagnosed with kidney stones while under defendant Hampton's care.

4

November 1, 2004 was reportedly within the proper limits. Under the supervision of physicians other than defendant Hampton, plaintiff underwent additional diagnostic testing and treatment related to his kidney stones in January 2005 in addition to continued treatment for blood pressure.

## Discussion

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003), quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998).

In order to establish an Eighth Amendment violation on the basis of inadequate medical care, a prisoner must allege acts or omissions that reveal "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A

5

serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995), quoting Johnson v. Busby, 953 F.2d 329, 351 (8th Cir. 1991). To prove deliberate indifference, a plaintiff must show that a defendant "knew of, yet disregarded, an excessive risk to [plaintiff's] health."  Logan v. Clarke, 119 F.3d 647, 649 (8th Cir. 1997), citing Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Actual knowledge of a serious risk is required.  See Farmer, 511 U.S. at 838.  "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned" under the Eighth Amendment.  Id.  On the other hand, on appropriate facts the requisite knowledge "may be inferred from . . . the very fact that the risk was obvious."  Coleman v. Rahija, 114 F.3d 778, 786 (8th Cir. 1997).

Plaintiff alleges two failures on the part of the defendants.  First, plaintiff argues that allowing defendant Hampton to treat and prescribe medication after the revocation of his medical license constitutes deliberate indifference.  Second, plaintiff maintains that defendants were deliberately indifferent in treating and prescribing medicine for plaintiff.

6

**A.   Mere Violation of State Law Is Not Actionable Under § 1983**

In and of itself, a violation of state law does not state a claim under § 1983. Collins v. Bellinghausen, 153 F.3d 591, 596 (8th Cir. 1998); Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993). Missouri law does prohibit a physician practicing without a license. See Mo. Rev. Stat. § 334.010. However, the violation alone does not suffice to show medical indifference under the Constitutional standard. Viewing the facts in a light most favorable to the plaintiff, defendant Hampton's license was revoked for a failure to pay taxes and/or file state income tax returns. The revocation does not relate to defendant Hampton's capabilities in treating plaintiff. More importantly, the revocation of a medical license for a failure to pay taxes does not bear on whether defendants "knew of, yet disregarded, an excessive risk to [plaintiff's] health." Logan, 119 F.3d at 649. As a matter of law, deliberate indifference to plaintiff's serious medical needs is not established by the fact of Hampton's license revocation standing alone, and defendant Hampton is entitled to summary judgment on this claim.

**B.   Plaintiff Has Failed to Present Evidence That Defendant Hampton Knew of and Disregarded Risk to Plaintiff's Health**

A negligent failure to diagnose or treat a condition is not sufficient to state a claim of deliberate indifference. Estelle, 429 U.S. at 105-106. Furthermore, "an inmate's mere disagreement with the course of medical treatment does not give

7

rise to a constitutional claim." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992).

Plaintiff asserts that defendants showed a deliberate indifference by allegedly prescribing ineffective medications for plaintiff's high blood pressure, increasing the dosage of one of the ineffective medications, neglecting to perform an x-ray to check for kidney stones, and failing to properly diagnose plaintiff's condition to prevent plaintiff's high blood pressure, nose bleeds, and hematuria. The Court will address each of the plaintiff's allegations in turn.

**1. Defendant Hampton's Prescriptions and Dosage Alterations Do Not Constitute Deliberate Indifference**

As noted above, a negligent failure to treat a condition is not grounds for deliberate indifference. Estelle, 429 U.S. at 105-106. Plaintiff had taken 25 mg of HCTZ per day for almost a year before defendant Hampton increased the dosage to 50 mg. The record only indicates that defendant Hampton was exercising his medical judgment in prescribing the medication and diagnosing plaintiff's symptoms.

The Eighth Circuit has addressed a similar case where a doctor had increased the dosage of his patient's blood pressure medication. See Jolly v. Knudson, 205 F.3d 1094 (8th Cir. 2000). In Jolly, as in the case at hand, the evidence only reflected that the doctor's actions were "aimed at correcting a perceived problem in [the plaintiff's] dosage levels," and thus did not constitute

8

medical indifference.  Id. at 1097.

If anything, the plaintiff's problems with blood pressure, hematuria, and nose bleeds seem to have occurred, or at least been more pronounced, after plaintiff went against the advice of his doctors and refused to continue taking the HCTZ.  Defendant Hampton only prescribed Atenolol after plaintiff's refusal to continue on HCTZ.  Plaintiff has failed to show that defendant Hampton was deliberately indifferent to plaintiff, particularly because several plaintiff's complained of conditions occurred after defendant Hampton stopped seeing plaintiff.  Thus, the Court finds as a matter of law that defendant Hampton did not act with deliberate indifference with respect to his prescriptions of medication.

**2. Defendant Hampton's Decision Not to Order an X-ray Does Not Constitute Deliberate Indifference**

Plaintiff complains that defendant Hampton did not heed plaintiff's request to have an x-ray performed on September 3, 2004 to determine whether plaintiff had kidney stones.  However, "[a] medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." Estelle, 429 U.S. at 105-106.  Furthermore, as noted above, "an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992).  Plaintiff's disagreement with defendant Hampton's medical decision not to order an x-ray fails to support his § 1983

9

claim.

### 3. Defendant Hampton's Potentially Incorrect Diagnoses Do Not Constitute Deliberate Indifference

An incorrect diagnosis does not violate a prisoner's Eighth Amendment rights. Bellecourt v. United States, 994 F.2d 427, 431 (8th Cir. 1993), cert. denied 510 U.S. 1109 (1994). The Eighth Circuit has held that a § 1983 claim based on a delay in medical treatment must be supported by "verifying medical evidence . . . to establish the detrimental effect of delay." Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (quotation marks and citation omitted) (abrogated on appellate jurisdictional grounds).

Plaintiff alleges that the problems he experienced of hematuria, nosebleeds, and high blood pressure only occurred after defendant Hampton began treating plaintiff. However, plaintiff has offered no support for this assertion and has failed to rebut defendant Hampton's contrary allegation, which is supported by medical records. Even if defendant Hampton did incorrectly diagnose plaintiff's kidney stones or high blood pressure, although the facts before the Court do not support such a finding, plaintiff still has failed to show that such an error constituted deliberate indifference on the part of defendant Hampton. The Court cannot infer that defendant Hampton had the requisite knowledge of a serious medical risk from the facts which the parties have presented, and was deliberately indifferent to that risk.

Defendant Hampton appears to have appropriately checked

10

plaintiff's blood pressure, adjusted plaintiff's medications and dosages, monitored plaintiff's urine, discussed with plaintiff proper diet and exercise, and responded to plaintiff's complaints concerning his medication and physical state. Simply because plaintiff did suffer from high blood pressure, hematuria, headaches, and nosebleeds does not mean a physician, licensed or not, "knew of, yet disregarded, an excessive risk to [plaintiff's] health." Logan, 119 F.3d at 649.

## **Conclusion**

For all the foregoing reasons, defendant Hampton is entitled to judgment as a matter of law, and defendant's motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Dr. Robert Hampton's motion for summary judgment [Doc. #42] is granted.


Dated this   20th   day of September, 2005.


                                           /s/Donald J. Stohr
                                           UNITED STATES DISTRICT JUDGE